## Case No. 1,279.

### BELLOWS v. HALLOWELL & AUGUSTA BANK.

[2 Mason, 31.] [1]

Circuit Court, D. Massachusetts. May Term, 1819.

TRIAL—SPECIAL VERDICT—AMBIGUITY—CORPORATIONS—EXPIRATION OF CHARTER—CONTINUATION—NEW CHARTER—OBLIGATIONS OF OLD CORPORATION.

1. Where a special verdict is imperfect by reason of ambiguity or uncertainty, so that the court cannot say for which party judgment ought to be given, a venire de novo ought to be awarded. Aliter where the plaintiff has only stated a defective title or case.

[Cited in Garland v. Davis, 4 How. (45 U. S.) 147. See, also, U. S. v. Collier, Case No. 14,833; Graham v. Bayne, 18 How. (59 U. S.) 60; Suydam v. Williamson, 20 How. (61 U. S.) 427.]

2. Where a new bank was incorporated with the same name as an old bank, whose charter was expiring, the new bank is not responsible for the notes of the old bank, although the major part of the stockholders may be the same in each bank.

[See Bank of U. S. v. Lyman, Case No. 924.]

3. Whether a charter be a continuation of an old corporation, or the creation of a new corporation, must be decided, not by the persons who are stockholders, but by the legislative intent in the act of incorporation.

4. The charter granted by the Massachusetts act of 23d of June, 1812, c. 47, to the Hallowell and Augusta Bank, is not a continuation of the old corporation of that name.

5. The mere receipt by the officers of a new bank, of the bills of an old bank of the same name, and paying out the same bills, does not make the new bank responsible to pay all the bills of the old bank.

[Error to the district court of the United States for the district of Maine.]

At law. This was a writ of error upon a judgment of the district court of Maine, in an action of assumpsit, brought by the plaintiff to recover of the defendants the amount of certain promissory notes issued by the Hallowell & Augusta Bank. The facts appear from the following special verdict, given in the district court, [unreported,] upon

---

[1] [Reported by William P. Mason, Esq.]

which judgment was rendered for the defendants.

The jury find specially the following facts, viz: That the bills or notes mentioned in the schedule annexed to the writ were duly issued by the president, directors and company of the late Hallowell & Augusta Bank, which was incorporated on the sixth day of March. A. D. 1804, the act of incorporation of which bank is by consent of parties made a part of this verdict; that on the 23d day of June, A. D. 1812, the defendants were duly incorporated as a banking company; the act of incorporation thereof is by consent of parties made a part of this verdict; that the bills or notes mentioned in the schedule annexed to the writ came lawfully into the hands of the plaintiff, and that he was the lawful owner and bearer thereof at the time of the commencement of this suit; that the payment of the same bills or notes was demanded by Edward Oxnard, the plaintiff's agent, before the commencement of this suit; that from and after the organization of the defendants' bank under the aforesaid act of incorporation, until the thirtieth day of September, A. D. 1814, the defendants, by their officers, received and issued the bills of the late Hallowell and Augusta Bank, and of other banks in good credit, without distinction, paying them out on checks and loans in the same manner, as they did the bills of their own bank, and said other banks; that previous to the said thirtieth day of September, A. D. 1814, the officers, viz. the cashier and several of the directors of defendants' bank frequently, and as often as occasion required, declared to all persons presenting the bills of the late Hallowell and Augusta Bank for payment, at the banking house of defendants, that there was no distinction or difference between the bills issued by the said late bank and those issued by defendants, that both were equally binding upon, and would be paid by defendants, that these declarations were made by several of the officers of defendants at their banking house, and during the hours of business, but such officers were never specially authorized by any vote of the corporation to make such declarations, and there is no proof that the other directors or stockholders knew of such declarations; that in consequence of these declarations and doings of the defendants' agents as aforesaid, and the specific payments hereafter mentioned, the bills of the said late bank, were, prior to the said thirtieth day of September, current and of equal value in the market and in the community with the bills issued by defendants; that the charter of said late bank expired in the month of October, A. D. 1812, and was continued in existence for certain purposes, by another act of the twenty-fourth day of June, 1812, which by consent of parties is made a part of this verdict; that said late Hallowell and Augusta Bank continued to pay specie for their bills up to the thirtieth of September aforesaid; that when application was made to the legislature of Massachusetts for the act of incorporation of the existing bank it was agreed to take the name of "The Hallowell and Augusta Bank." And that the reason assigned by the agents of petitioners therefor, was, that they wished to continue their former business, without interruption, but that reason was not assigned in the petition; that the president, cashier and board of directors, as far as the same was filled, of defendants' bank, were also the president, cashier and directors of the said late Hallowell and Augusta Bank, until the month of October, A. D. 1814; that from the month of October, A. D. 1812, to the month of October, 1814, the defendants' officers had knowledge that the bills of the said late bank, and of other banks as aforesaid, had been received, paid out, and put into circulation in manner as aforesaid, by the officers and agents; and that no vote or act of their corporation was passed or done, to express their dissent or disapprobation thereof until after that time; that there were no accounts kept in the books of defendants' bank, between them and the late Hallowell and Augusta Bank, from the month of October, 1812, to the month of October. 1814; nor were there any accounts kept with any other bank, except those arising from specie deposits; that some time between the month of October, A. D. 1813, and the month of January preceding, dividends of seventy five per cent. of the capital of the said late Hallowell and Augusta Bank were made and paid over to the stockholders thereof; that on the eighth day of September, A. D. 1812, the following vote was passed by defendants. viz.: "To admit as associates of Benjamin J. Porter, Nathaniel Dummer, Thomas Agry, in the Hallowell and Augusta Bank, incorporated June twenty-third, A. D. 1812, all the stockholders in the old bank, to the amount of three quarters of the number of shares they severally hold therein, on their paying the sums required by the corporation." And that at the same time the defendants directed their cashier to inform the stockholders of the said late bank, that they were entitled to three-fourths their number of shares in defendants' bank, on their paying in silver and gold, twenty-five dollars on each share on the first day of October then next, which was then paid, and the residue of said capital was paid in October 1st, 1813; that on the twenty-fifth day of November, 1814, the defendants passed the following vote, at a legal meeting of their directors, viz.: "That the cashier be directed, as soon as may be, to call on such persons as are now indebted on note or otherwise to the Hallowell and Augusta Bank, incorporated March 6th, 1804, and request them to renew their notes payable to the Hallowell and Augusta Bank, incorporated June, 1812, and that on receiving the same, with good security to the satisfaction of the directors, the amount thereof be passed to the credit of the said old Hallowell

and Augusta Bank, in part payment for bills of said bank, taken up and paid by said institution," the debt of the old to the present bank being sixty-five thousand dollars; that on the tenth day of December, 1814, the defendants passed the following vote, viz.—"Whereas, on the eighteenth day of July, now last past our president and directors did borrow of William Bartlett, Esquire, of Newburyport, the sum of fifty thousand dollars, for our use and benefit, and did execute to said Bartlett a bond for the same sum, signed by them, to wit, Benjamin J. Porter, Nathaniel Dummer, Thomas Agry, William H. Page, William Nichols, and Jeremiah Dummer, cashier, for and on behalf, and to the end, that said sum should be paid as speedily as possible; voted, that we do consent and agree to said bond, given as aforesaid, and confirm and fully ratify the transaction, and make the debt our own, and that our president and directors are hereby authorized and directed to pay and discharge the aforesaid debt, and any interest due thereon, out of the funds and property of our said corporation, as soon as the same may be conveniently done;" that the articles of the by-laws of defendants, which are hereto annexed were duly passed and enacted; and that the same, by consent of parties, are a part of this verdict; that at the time the defendants' bank was organized and went into operation, viz. in October, 1812, several persons were stockholders, who never had any interest in the old bank; that during the charter of the old bank, and its continuance by virtue of the act of twenty-fourth June, 1812, the books, accounts, funds and transactions of said corporation were kept separate and distinct, in all respects, from those of defendants' bank, excepting so far as the contrary may appear from the facts herein found. But the business of both banks was transacted in the same building for two years, and afterwards the business of the old bank was done in a separate building, and in a different part of the town. [Judgment affirmed.]

Davis, Sol. Gen., for plaintiff.

The object of this suit is to enforce payment by the defendants of the bills of the former bank.

1st. The present bank is nothing more than a reincorporation of the former bank, and is therefore by law entitled to the privileges and liable for the debts of the former corporation. This corporation is different in its nature and objects from the ancient corporations which have been the subjects of judicial investigation, and in relation to which the rules of law have been settled, such are all that Blackstone mentions. There is little resemblance between a corporation of a town, city, or of the ancient spiritual and eleemosynary corporations, and one established for commercial or monied objects; the exercise of the corporate franchise is wholly different, as will appear from a further examination; indeed as stated by Chief Justice Marshall, in a former case, "the qualities and disabilities of ancient corporations, are not to be ascribed to such a corporation as this, these are precisely what the act of incorporation makes them."

The first difficulty that we may be supposed to meet from an inspection of the several acts referred to in the verdict is, that there were supposed to exist two incorporations, for the same objects, at the same time: this difficulty is easily surmounted. By the act of the year 1804, the old bank expired October 1st, 1812. By the act of the year 1812, the present bank was to commence on that day, and the first instalment to be then paid. By the act of the 24th of June, 1812, the old bank was in fact dissolved after the 1st of October, 1812. Its powers as a bank then ceased, and it was continued for special and necessary purposes only. When there is an existing, acting corporation, another cannot be created, with the same powers and co-extensive jurisdiction. But when the end or purpose for which an institution is created ceases, the institution ceases.

Smith's Case, [King v. Mayor of London,] 12 Mod. 19. The mutilated relict of the old corporation was no bar to the new one. All the charters granted recently in England are confirmations of old charters, when the old corporations were dead. In the case of King v. Pasmore, 3 Term R. 199, the incorporation was granted to new corporators, but it was held to be the same corporation if accepted. The old corporations were revived, resuscitated by the new charters, yet they were considered to be successors and the same, for certain purposes, for rights and liabilities. In the case now before the court a new incorporation was prayed for, obtained and accepted, with the same name and the same corporators, so far as they are mentioned; and the reason assigned is, to continue their business without interruption. This new bank was to go into operation on the day the old bank ceased, and the first instalment to be paid on the first of October, 1812, at the same place, in the same building, and for the same objects; and with a special provision, that the directors of the old bank might be directors of the new one. The president and cashier were the same in both banks, and the defendants shew by their corporate acts, that they considered themselves as successors of the old bank. All the stockholders of the old bank were admitted, by a corporate act, to be stockholders of the new bank; and this before the new bank went into operation. There was a vote directing the cashier to notify the stockholders of the old bank that they were entitled to three quarters of the number of shares in the new bank, and the capital of the old bank was divided soon after the new bank was organized. By a vote of the directors of the new bank, the debts of the old bank were called in and made payable to the new bank.

From this view of the facts it seems clear, that both the legislature, and the corporation itself, considered that the new bank was successor to the old, and that it is a mere revival or reincorporation of the old bank. It follows as a clear principle of law that they are liable for the debts as well as entitled to the franchises of the old corporation.—Mayor, etc., of Colchester v. Seaber, 3 Burrows, 1866. In Luttrel's Case, 4 Coke, 87, it is said, a corporation having franchises, &c. by grant, and afterwards incorporated by another name, the new body will enjoy all the franchises and hereditaments of the old one.

2d. There appears sufficient matter in the special verdict to raise a presumption in law, that the defendants assumed the payment of the bills of the former bank. It shall be presumed from the facts already stated, viz. their acceptance of the new charter—their taking a transfer of all the property—their taking the funds, and debts, and stock of the old bank—their actually paying Bartlett's debt, which was for the old bank—and their crediting the old bank with the interest of that debt—their taking the bills of the old bank and putting them into circulation after the first of October, 1812—and this they did in their capacity of officers of the new bank, and they are estopped from saying that they did it as officers of the old bank, because the law of the 26th June prohibited this under severe penalties. By an express article in the charter, all bills issued from the bank, signed by the president, shall be binding on the bank. The declarations of their agents in the discharge of corporate duties, express the same. The declarations of the cashier and directors as often as occasion required made at the banking house of the defendants, during business hours, to all persons presenting the old bills for payment, that both bills were equally binding on the new bank, in consequence of which declarations of the agents of the defendants, the old bills were current. The officers of the bank were, from the nature of the corporation, legal agents of the corporation for all their transactions, and there can be no doubt that these transactions were within the scope of their agency. It appears also from the verdict, that the defendants were acquainted with these declarations of their agents, and therefore assented to them. This knowledge of the defendants appears also from the bylaws. The statement and representation of an agent within the scope of his authority, are evidence against the principal and equal to his own act. Phil. Ev. 73. In the case of agents of corporations, it shall be intended that they act by deed when done. 2 Bac. Abr. p. 13. When the acts of the agent of a bank have been sanctioned by his principals, and his contracts performed, it carries the highest evidence, that he was lawfully authorized. Rex v. Bigg, 3 P. Wms. 419. A third person cannot produce the evidence that he was authorized, the provisions of the charter concern only the corporation, if they do not conform to their rules, it cannot deprive third persons of their rights. Persons doing business at the bank, are not bound to enquire whether the corporation act according to their own laws, if they exceed their powers they are answerable to the corporation, third persons, strangers, are not to be deceived and to suffer for the fraud of the corporation's agents. The rule of law is, that if one of two innocent persons must suffer, by the fraud of a third person, it shall be that one who put it in the power of the third person to commit the fraud. The confessions of individual members of a corporation, when made in the exercise of corporate duties, may be received in evidence. Hartford Bank v. Hart, 3 Day, 493. If a man pays money with a full knowledge of all the facts, he cannot recover it back. All the negotiations of these officers, prior to September, 1814, have been sanctioned by the defendants; and can the new bank recover back the money paid for their old bills, prior to that time? It appears in the case of Beatty v. Marine Ins. Co., 2 Johns. 114, that if the secretary had stated the loss to the number of officers required by the act to agree to pay it, they would have been held to pay, yet this was altogether a verbal arrangement, but within the agency of the officers of the corporation. When a reasonable expectation is excited, this of itself is a good consideration for a promise—but in this case there was a valuable consideration for the promise or liability to pay the old bills, viz. the profits arising from the discounts as valued by the defendants on putting their notes into circulation.

Wm. Sullivan, for defendants.

This is assumpsit for money had and received to the use of the plaintiff; and to support his declaration, the plaintiff exhibits bills dated at various times, from January 6th, 1806, to August 15th, 1812. And the question is, whether these bills were the promises, either express or implied, of the bank incorporated on the 23d day of June, 1812. The special verdict finds that the bills were issued by the bank which was incorporated March 6th, 1804; the charter of which expired on the first Monday of October, 1812. It does not appear that the bills declared on were ever in the bank now sued; or that the plaintiff possessed them until the commencement of his action. It consequently does not appear that the new bank ever issued these bills in any way. The question then arises whether these banks were so far one and the same, that the promissory notes of the one are to be deemed and taken to be the promissory notes of the other. If so, it must be either because the charter of the new bank makes the new bank responsible for the bills of the old bank, or because some act has been done by the new bank whereby it is bound to pay all the bills issued by the old bank.

It is not pretended that there is any express provision in the act of incorporation, whereby the new bank is made responsible for the debts of the old bank; but it is said that the new bank is but a reincorporation of the old one. In 1812, the charters of many of the banks in Massachusetts expired, and in the same year new institutions were incorporated, many of which took the names of those which had ceased to exist. This new bank was incorporated in June, 1812; but the charter of the old did not expire until October of the same year; and was then continued, for certain purposes, by an act passed by the legislature, in the month of June previous. There were stockholders in the new bank who had no interest in the old bank. The books, accounts, funds and transactions of the two banks were left entirely distinct, and the business of the two banks for a part of the time transacted in different buildings and at different parts of the town. If the argument of the plaintiff's counsel is correct, then there is one institution having two distinct charters, expressing different purposes, to expire at different periods, having different corporators, different funds, and alike only in its officers.

Secondly. Has the new bank done any act whereby it has become liable to pay all the bills issued by the old bank, remaining unpaid. A corporation is a creature of the law —it has no power but that which its act of incorporation confers. A bank is an association of individuals, acting under certain corporate powers, who become interested in the capital stock according to an established ratio. They agree that the stock thus jointly owned, shall be managed according to the provisions of the charter, and the by-laws which the corporation see fit to adopt. The usual modes of making contracts are by seal, by note, and by making a promise in writing signed by the president and cashier. And a corporation cannot contract in any other mode. King v. Chipping Norton. 5 East, 239; 1 Bl. Comm. 475; 6 Vin. Abr. 268, 292, 287; 3 Salk. 103; 1 Kyd, Corp. 449, 259. The promises declared on are not made in either of these ways, supposing the corporations to be distinct. An opinion given by the officers of the bank, or their assurances, are not acts of the corporation and are not binding upon it. Beatty v. Marine Ins. Co., 2 Johns. 114; Head v. Providence Ins. Co., 2 Cranch, [6 U. S.] 166; 1 Kyd, Corp. 261; Rex v. Bigg, 3 P. Wms. 419; King v. Pasmore, 3 Term R. 199, 241. If they could in any manner be considered as promises, they were made without a consideration, and on that account void. They were also promises to pay the debts of another corporation, and therefore within the statute of frauds. It must be proved by some vote, or other legal act of the corporators, that they meant to adopt these bills as their own. The officers of the corporation can only act in conformity to the authority given them;

and if they did issue these notes with a view to have them considered as their own notes, this would not bind the corporation, unless it could be shown that authority either express or implied was given to these officers, by the corporation, so to do.

STORY, Circuit Justice. If the special verdict in this case be imperfect, by reason of any ambiguity, or uncertainty, so that the court cannot say for which party judgment ought to be given, the judgment of the district court ought to be reversed, and a venire facias de novo awarded for a new trial at the bar of this court. Rex v. Hayes, 2 Ld. Raym. 1518; Rex v. Huggins, Id. 1574, 2 Strange, 882; Rex v. Woodfall, 5 Burrows, 2661; Goodtitle v. Jones, 7 Term R. 47; Bird v. Appleton, 1 East, 111, note a; Gibson v. Hunter, 2 H. Bl. 187; Town of Shrewsbury v. Kynaston, 7 Brown, Parl. Cas. 396, 2 Strange, 1051. But if the verdict be not ambiguous or uncertain in itself, but the plaintiff has stated a defective case or a defective title, then the judgment ought to be for the defendants, and a venire de novo ought not to be granted. Bentley v. Smith, 3 Smith, J. P. (Eng.) 17. We cannot say upon this verdict that there is any ambiguity or uncertainty in the facts found; the defect, if any, (which will presently be considered,) is in the title set up by the plaintiff for a recovery. We are driven therefore to consider the sufficiency of that title, as it stands upon the record.

The plaintiff contends for a reversal of the judgment, in the first place, because the notes in question were made by, and are obligatory upon, the defendants in their corporate capacity. If this ground fail him, he next contends that the defendants have adopted and made the notes their own by the declaration and conduct of their officers. If this position cannot be sustained, he contends in the last place, that the defendants have the funds of the old bank in their possession appropriated to the payment of the notes of the old bank, and that the plaintiff, as holder of the notes now in question, is entitled to so much of these funds as equals the amount of his notes, as money had and received to his use.

The first ground rests on the suggestion that the old bank and new bank are the same corporation, the new charter being but a reincorporation or rather a continuation of the charter of the old bank, which would otherwise have expired by its own limitation. If the premises were well founded, the conclusion would certainly follow, that the new bank is liable for the debts of the old bank. Mayor, etc., of Colchester v. Seaber, 3 Burrows, 1866; Scarborough v. Butler, 3 Lev. 237; Rex v. Pasmore, 3 Term, R. 199; Luttrel's Case, 4 Coke, 87. But we are called upon to admit these premises, not upon the

plain and positive enactments of the statute incorporating the new bank, but upon the collateral facts, that the names of both corporations are the same, the officers are the same, and a majority of the stockholders are the same; and that the business of the old bank was for a time done, and its debts paid, by the new bank. It is certainly true that a corporation may retain its personal identity, although its members are perpetually changing; for it is its artificial character, powers and franchises, and not the natural character of its members, which constitute that identity. And for the same reason corporations may be different, although the names, the officers, and the members of each are the same. An insurance company composed of the same natural persons and officers, and with the same name as an existing incorporated bank, would still be a different corporation from the bank. The similarity of name, of officers, or of members, or even of objects, cannot then, per se, establish the identity of corporations created at different times, by different charters, and having a distinct independent being. And one corporation may transact the business and pay the debts of another corporation without thereby merging in the latter its distinct corporate existence. There is indeed a repugnancy in the statement of the proposition that two corporations are in point of law the same, for it would at the same time establish that there is but one corporation.

To ascertain whether a charter create a new corporation, or merely continue the existence of an old one, we must look to its terms and give them a construction consistent with the legislative intent and the intent of the corporators. In the present case, the charter of the old bank was granted by the act of the 6th of March, 1804, and was to continue from the first Monday of October, then next ensuing, until the expiration of eight years. 3 Mass. Gen. Laws, 206. Its existence was therefore limited to the first Monday of October, 1812; and by an act of the 24th of June, 1812, c. 57, all banks incorporated under the authority of the commonwealth, whose corporate powers were limited by law to or at any time before the last day of October then next ensuing, were authorized to continue corporations until the first Monday of October, 1816, and no longer, for the sole purpose of enabling such banks gradually to settle their concerns and divide their capital stock. And the act contains an express prohibition of their acting as corporations for banking generally. This certainly shews a determination on the part of the legislature not to renew or to perpetuate the existence of any of the banks within the purview of the act; and among these the old bank was unquestionably included. The charter of the new bank was granted by an act of the 23d of June, 1812, c. 47, while the old bank was in existence. It does not purport upon its face to be a grant to an existing corporation, but to private individuals. Its capital stock is less by $50,000 than that of the old bank. The stock is to be held, not by the stockholders of the old bank, but by certain persons named in the act, and their associates and assigns. The act refers also to the old bank, as an existing corporation, and declares, not that the directors of the old bank shall be the directors of the new, but that "any director of the Hallowell and Augusta Bank, now existing, may be eligible as a director of the bank hereby established." It further declares that the new bank may take, receive and hold, by assignment, any mortgages held by the old bank "which may be assigned and taken by agreement between the two corporations." This clause affords abundant evidence that the new charter was not granted to the old corporation, for it contemplates assignments of mortgages between the two banks as distinct corporations; and it would be utterly absurd to say that a corporation might contract with, or make conveyances to, itself. Upon the very face of the charter, then, enough appears to shew, that the legislature contemplated the erection of a new corporation. And if the language had not been so express, the same must have been the conclusion of law; for every charter must be taken to be a grant of a new corporation, unless it be granted to an existing corporation. If indeed the new charter had been granted to the old bank, it would not have been binding until it was accepted by it; and there is not the least pretence to say upon this record, that the old bank ever accepted the new charter, or could by law have claimed it as a grant in its corporate capacity. There is then an end of the argument raised on the first point.

And the second point is upon this record equally untenable. For assuming that the declarations of the officers of the bank in respect to matters within the scope of their duty will bind the corporation, it is not found, and certainly cannot be intended upon this special verdict, that such declarations were within the scope of their duty, or were made with reference to the identical notes now in question. Much less is it found as a fact, (which is necessary to the legal inference,) that the notes in question were adopted by the new bank and issued as its own. If it had been found, that the declarations were made in reference to these notes in particular, and that such declarations were within the scope of the duty of the officers of the bank, there would have been some color to have awarded a venire de novo to have found the other fact. Or if the bank officers had actually issued these notes, as cash from the bank, in payment of checks or other dues, with the express declaration that they were good and binding on the bank, and that the bank would guarantee them, I am not prepared to say, that such declarations in reference to the notes held and

issued by the bank would not be within the scope of the duty of the cashier, and would not bind the bank, so far, that if the notes turned out unproductive, the receiver might maintain an action for money had and received against the bank, upon the ground that the bills were not, under such circumstances, a good payment of such checks or other dues. But no facts are found in this special verdict that will enable us to arrive at such a conclusion.

The third point wholly fails for want of facts to sustain it; and it may therefore be at once dismissed.

The questions in this cause have been discussed and decided in the supreme court of this state in another cause, (Wyman v. Hallowell & Augusta Bank, 14 Mass. 58;) and I may therefore be well saved a more minute examination of the principles applicable to them, since I entirely concur in that decision.

Let the judgment be affirmed.