## GLIDDEN *v.* TOWN OF UNITY.

33 571
70 113

The acts of town officers within the scope of their authority may furnish ground for presumptions and inferences as against the town, in the same manner as such presumptions and inferences may arise against natural persons from their acts.

The acts and accompanying declarations of one of the selectmen of a town in taking proper measures for preparing and presenting an account to the selectmen of another town, for medical attendance upon a pauper having his settlement in such other town, may be presumed to be done with the assent of the other selectmen; and if the acts and accompanying declarations as part of the *res gestæ,* are of such a character as to warrant the inference that a claim has arisen in favor of the first town against the other, on account of the medical attendance, they may be used as evidence to the jury that the first town had agreed to pay for the medical attendance.

By indentures of apprenticeship between the overseer of the poor of the defendant town and the plaintiff, a minor pauper was bound as an apprentice to the plaintiff until he should arrive at the age of twenty-one years. By the terms of the indenture the plaintiff covenanted, among other things, that he would provide board, clothing, nursing, attendance, and other necessaries for the comfortable support of the minor in sickness and health; would give him an education sufficient for him to transact any business as a farmer or mechanic, (providing he has capacity;) pay said minor at the age of twenty-one years $100, and give him two suits of clothes throughout, providing said minor should continue to be a healthy boy, and to be a faithful servant during his minority. The minor became permanently disabled by an accident for any bodily labor — *Held,* that the condition relative to the minor's continuing to be a healthy boy was not to be limited to the stipulation for the payment of the $100 and the suits of clothes, but extended to all the stipulations of the plaintiff, and that the indenture after the injury was void at his election.

A declaration in assumpsit that the defendant heretofore, to wit., on the 5th of October, promised to pay for the support of a pauper at the rate of five dollars a week for the first two weeks, four dollars a week for the next two succeeding weeks, and three dollars a week for the remaining time, is supported by proof of a contract, made on the last of October or first of November, to pay at those rates for the support from the time of making the contract.

ASSUMPSIT, for the board and support of one Albion Dike, alleged to be a pauper, standing in need of relief, and residing in Unity. The writ was dated March 12, 1851. The declaration contained three counts. The second count, on which the plaintiff principally relied, was as follows:

" And also for that whereas one Albion Dike, to wit., on the fifth day of October, A. D. 1850, at said Unity, was a poor person, and was unable to support himself, and had no relatives in the line of father or grandfather, mother or grandmother, children or grandchildren, of sufficient ability to relieve him, and was then, and for a long time previous had been, a resident of said Unity ; and whereas the said defendants were by law liable to furnish all necessary relief and maintenance to said Dike, and being so liable the said defendants, in consideration that the plaintiff would board and support the said Dike, then and there promised the plaintiff to pay him therefor at the rate of five dollars each week for the first two weeks, four dollars each week for the next two succeeding weeks, and three dollars each week for such remaining time during which he should furnish such board and support to the said Dike, until he, the said plaintiff and the said defendants should make a new bargain.

And the plaintiff avers that he did board and support the said Dike from the said fifth day of October, A. D. 1850, to the day of the date of this writ, being in all twenty-two weeks and four days, which, at the rates aforesaid, amounted in the whole to the further sum of seventy-three dollars and seventy-one cents, to wit., at Unity aforesaid; which said last mentioned sum the said defendants became liable to pay the plaintiff, according to their said promise last aforesaid, but which they have never paid.

The first count was like the second, except that it alleged a promise on the part of the defendant to pay for the board and support of the said Dike, and also for his doctor's bill.

The third count was an *indebitatus assumpsit* for the board and support of said Dike from the fifth day of October, 1850, to the date of the writ. Plea, the general issue.

The plaintiff introduced evidence tending to prove that sometime in the latter part of October, or the first part of November, 1850, the selectmen of Unity made a bargain with the plaintiff for the board and support of the said Albion Dike at the rate of five dollars a week for the first two weeks, four dollars a week

Glidden *v.* Unity.

for the second two weeks, and three dollars a week afterwards, till they made a new bargain.

He also introduced the deposition of Betsey Glidden to prove said contract, and also to prove that the doctor's bill was included in the contract. The following question was put to the witness in said deposition : " Was there or not at the time the contract you have testified to was made, anything said by the parties about the bill for doctoring the boy Dike, and if you say there was, please state what was said."

To this question the witness made the following answer : " I cannot tell as there was on that day, but Mr. Perkins came to our house afterwards, and told us to tell Sylvester Glidden he had better get the doctor's account, as they wanted it to send to Littleton with the other account, and they wished to send it before the ninety days were out, and I told Sylvester Glidden the errand Mr. Perkins left with me."

It was admitted that said Perkins was one of the selectmen of Unity in 1850, and that the settlement of said Dike was in Littleton.

The defendant objected to the foregoing answer, but it was admitted by the court.

The said Perkins, being afterwards called as a witness by the defendant, testified in his direct examination, " that in the latter part of November he called at the plaintiffs ; old Mrs. Glidden" (being the said Betsey Glidden,) " came to the door ; that he asked her if Sylvester Glidden was at home ; that she said he was at Claremont ; that he told her he wanted her to tell him that he had better get a copy of the doctor's account, to have it ready when the selectmen of Littleton came down ; that he told her he thought they would be down before the ninety days were out, and he had better have all the papers."

After the evidence was closed on both sides the defendant's counsel moved for a nonsuit, on the ground that there was a material variance between the declaration and proof, which the court declined to grant.

The defendant's counsel requested the court to instruct the

jury that in the second count the time was material, and that unless they found the contract to have been made on the 5th day of October, 1850, as alleged, and a contract to pay $5 for the two weeks next succeeding, they must find for the defendant on that count; but the court declined so to instruct the jury, but instructed them that the time was immaterial except so far as it affected the amount of the plaintiff's claim.

In order to show that the plaintiff was bound to support said Dike, and could maintain no action against the defendant for his support, the defendant introduced the indentures between the overseers of the poor of the said town of Unity and the plaintiff, which are as follows:

"This indenture, made by and between Ezra J. Glidden, overseer of the poor of the town of Unity, in the county of Sullivan and State of New-Hampshire, of the one part, and Sylvester Glidden, of said Unity, of the other part, witnesseth,

That the said overseer, by the authority in him vested by law, has bound and does hereby bind out Albion Dike, (a minor child of Benjamin Dike,) a person residing in said town of Unity, who is not employed in any lawful business, and whose parents are unable or neglect to maintain him, as an apprentice unto the said Sylvester Glidden, to learn the business, art or trade of a farmer, and to serve the said Sylvester Glidden faithfully from the date hereof until the ninth day of November, in the year eighteen hundred and sixty, when the said minor will be of the age of twenty-one years.

And the said Sylvester Glidden on his part covenants that he will teach said apprentice, or cause him to be faithfully taught in said business, trade or art, and will provide for him suitable board, lodging, clothing, nursing, attendance, and other necessaries for his comfortable support, in sickness and in health, and that he will cause said minor to be instructed to read, write and cipher, and give him a good education, sufficient for him to transact any business as a farmer or mechanic, (providing said minor is capable of receiving it, or has a common capacity to receive an education,) and pay said minor, at the age of

twenty-one years, one hundred dollars, and give him two suits of clothes throughout; one suit is to be a common, every-day suit, the other a meeting suit; providing said minor should continue to be a healthy boy, and be a faithful servant during his minority.

In witness whereof the said parties have hereunto set their hands and seals, this, the twenty-third day of March, in the year eighteen hundred and forty-seven.

EZRA J. GLIDDEN, [L. S.]
*Overseer of the Poor in Unity.*
SYLVESTER GLIDDEN. [L. S.]

Signed, sealed and delivered
   in presence of
  HENRY CRAM,
  ELUTHERIA CRAM."

It was admitted that the said Dike had become permanently disabled by reason of an accident that happened to him before the said fifth day of October, and there was evidence tending to prove that the plaintiff had availed himself of the proviso in the said indentures contained.

The defendant requested the court to instruct the jury, that the proviso did not apply to the covenant for the support of Dike, but the court declined so to instruct them, but instructed them that the proviso applied to all the covenants of the indentures.

The jury returned a verdict for the plaintiff.

To the ruling of the court, admitting the said answer of the said Betsey Glidden, in her said deposition contained, and to the ruling of the court refusing to grant the defendants' motion for a nonsuit, and for not instructing the jury, as requested, the defendants excepted and moved for a new trial.

*Cushing*, for the defendants, argued that the statement of Perkins, testified to by Betsey Glidden, was incompetent, as being a declaration made in relation to the agreement of one of the selectmen subsequent to the time of making, and also as being hearsay — said Perkins being a competent witness.

He also contended that the proviso contained in the indentures that the minor should continue to be a healthy boy, was to be applied only to the stipulation to pay the $100 and provide the two suits of clothes, and was not to be considered as qualifying any other of the stipulations of the contract.

*Burke,* for the plaintiff, argued that the objection to the testimony of Betsey Glidden was waived by the introduction by the defendants of the testimony of Perkins to the same matter, by the neglect of the defendants to except to the testimony upon the five former trials of the action, and by the omission to state the ground of the objection, and he cited upon these points, *Greenleaf's Lessee* v. *Birth,* 5 Peters 137; *Wheeler* v. *Hill,* 4 Shep. 329; *Lisbon* v. *Bath,* 3 Foster 9; *Camden* v. *Doremus,* 3 Howard 315.

He also contended that the testimony of Betsey Glidden on this point was immaterial, and that a verdict was not to be disturbed for immaterial testimony, and cited *Clement* v. *Brooks,* 13 N. H. 92.

He also argued that the precise time of the contract was immaterial; that it did not constitute an essential part of the contract, and therefore need not be alleged, and cited 1 Chitty's Pl. 287, 8; Steph. on Pl. 312; Arch. Pl., Am. ed., 1824, 115; Gould's Pl., chap. 3, secs. 64, 65; and contended that the contract on the part of the plaintiff in substance was to support Dike, and on the part of the defendant to pay for such support the sums stipulated per week, *from the time the contract was made,* and not from the 5th of October, 1850; and it therefore was not necessary to prove that it was made on the day alleged, especially as it was alleged under a *videlicet.*

As to the construction to be given to the indentures in reference to the proviso, he relied on the decision of the court in this action, 10 Foster 104, as settling the question.

SAWYER, J. The first question in the case arises upon the objection taken by the defendants at the trial to the admissibility

of one of the answers contained in the deposition of Betsey Glidden. The answer is a statement of the witness, of what was said and done by one of the selectmen of the town subsequently to the making of the contract for the board of the pauper, relative to the bill of the physician for his medical services in attending upon the pauper. It was a material inquiry upon the trial, whether the town agreed to pay the plaintiff for the expense which he might incur by reason of the medical attendance necessary for the pauper, as a claim distinct from that for the board. Thus, to contract for the required medical attendance was as clearly within the scope of the authority of the selectmen, acting in the capacity of overseers of the poor, as was their agreement to pay for the board of the pauper, and such contract need not be proved by any direct evidence of the making of it. In all American courts, towns and other corporations are now to be considered as subject to the same presumptions and implications arising from their corporate acts or the acts of their agents, within the scope of their authority, without either vote, deed or writing, as in the case of natural persons. Vide authorities collected in 2 Kent's Com. 290, and Ang. & Am. on Corp. 212. They may be bound by the express promise of their agents or officers, acting within the scope of their authority, or such promise may be implied against the corporation, from the acts of its agents within their authority, as in the case of natural persons. 8 Pick. 178 ; 2 Mason 31.

The acts and doings of the selectmen as overseers of the poor, touching any of the matters falling within the scope of their official duty, may be proved as evidence against the town, and from them may be drawn all the just inferences against the town which would arise against a party so acting in reference to his private affairs.

It is the duty of the selectmen, as such, to attend to the prudential affairs of the town. In the discharge of this duty a great variety of acts are to be performed of a mere ministerial character, many of which are such that when performed by one of the board, the assent and concurrence of the others are to be

presumed. *Lee* v. *Deerfield*, 3 N. H. 290 ; *Woods* v. *Dennett*, 9 N. H. 55. In transacting the business of the town, much that is required to be done by them is of a mere formal character, requiring no deliberation ; nothing like the exercise of the combined judgment of the board, and consequently involving no necessity for conference or discussion, and which may be done as well for the interests of the town by one as by the joint action of all. In such case, to require that there should be the actual concurrence of all or of a majority before proceedings are had, or their express assent subsequently given, to render them valid and binding on the town, would necessarily be attended with great inconvenience and without the slightest advantage. The necessary and proper measures taken to prepare for the adjustment of a claim made by the town against another, for the support of a pauper having his settlement in such other town, would be of that character. In all the mere formal arrangements necessary to be made in order to put the claim in the way of adjustment, not the slightest necessity can ordinarily exist for conference and deliberation among the selectmen; and it would be idle to hold that when one of the selectmen performs such acts, the express concurrence of the others must be shown, to give them validity as the acts of the town. If the defendant town had a claim against the town of Littleton for supplies and medical attendance furnished to the pauper, it was the duty of the selectmen to procure the account, put it in proper form, and take measures, by a notice or otherwise, for collecting the amount due upon it. In doing these mere formal things, however, there was no necessity for or propriety in the united action of all or a majority of the board. They might and should be done by one alone. The concurrence of the others is to be presumed. In doing thus the selectman would be acting within the scope of his authority, as an agent of the town. It would consequently be the act of the town, and all the legitimate inferences might be drawn from it, against the town, which would arise in the like case against an individual thus acting on his private account. If the act done, and the accompanying declarations explanatory of it, were of

such a character as to warrant the inference that an agreement had been previously made by the selectmen in behalf of the town, which by their office they had the power to make, then the act, and the accompanying declarations as a part of the *res gestœ*, would be competent evidence of such agreement, and it would be evidence, not in the nature of an admission by the selectmen, of the past fact that an agreement had been made, but as a proceeding naturally and ordinarily following such agreement, and most satisfactorily and consistently accounted for by such previous agreement, and therefore laying the foundation for an inference that such agreement had been made.

Now this we understand to be precisely the character of the proceeding of Perkins, one of the selectmen, in calling upon the plaintiff for the doctor's bill, and his accompanying declaration of the purpose for which it was desired, " to be sent to Littleton with the other bill, before the ninety days were out." It was a proceeding, on its face, appearing to be done in the course of official duty ; the taking necessary and proper measures towards collecting an account claimed to be due to his town from Littleton, for medical attendance upon a pauper having his settlement in Littleton. The concurrence of the other selectmen in his taking these measures is to be presumed. They were of a character to indicate more or less clearly that the plaintiff had some interest in the account, or at least that he had some connection with it.

That this has some tendency to show an agreement between the selectmen and the plaintiff, in relation to the medical attendance, we think is clear. What its weight might be is immaterial, if it has a legal tendency that way, and this we think it had.

Another question raised in the case is, as to the effect and extent of the proviso or condition contained in the indentures between the plaintiff and the overseer of the poor, that the minor should continue to be a healthy boy, and a faithful servant during his minority. There can be no doubt that this condition is one upon which all the covenants on the part of the plaintiff are made to depend. This question, however, has been decided in

this case when before the court, upon a former occasion, and is not now open. 10 Foster 104. We are satisfied with the views then expressed, and have no doubt of the correctness of the decision. The nature and circumstances of the contract clearly indicate that it was intended and understood by the parties as applying to the entire contract, and not to the covenant alone which immediately preceded it.

The contingency having arisen upon which the plaintiff had the right to put an end to the contract, and he having elected to do so, it is clear that he was not under obligation to maintain the pauper during the time the supplies were furnished which are the subject of this suit.

The remaining question is that arising upon an alleged variance between the agreement laid in the declaration and that offered in evidence. The agreement is alleged under a *videlicet* to have been made October 5, 1850. The evidence shows it to have been made the last of October, or first of November. Whether there is or not such variance in this particular as amounts to a legal exception, depends upon the question whether the time of making the contract is material, as being of the essence of the agreement, and constituting one of its material elements. The agreement of the town is to pay a stipulated price for the first two weeks, another stipulated price for the next two weeks, and another still for the subsequent time. The agreement of the plaintiff is to board and support the pauper from the time of making the contract, at those prices. The contract takes effect and is operative from the time of making it, whatever may be the day on which it was made. It is essentially the same in all particulars, whether made on one day or another. The whole of the substance of it would be shown by proof that it was agreed as thus stipulated, without proof of the particular day on which it was made. And the plaintiff's claim and right to recover would fully appear by proof that he commenced to fulfil his part of it on the day it was made, without showing when that day was, by then furnishing the board and support, and that he continued to do so from the time of making

the agreement for a certain number of weeks. The contract would be the same in substance, whether laid on the first or the last day of the month; namely, a contract by the town to pay the price stipulated for the board and support, from the time of making it, irrespective of the particular day of the month on which it was made. The exceptions upon all the points must be overruled and          *Judgment rendered on the verdict.*