Carr, J.
This case was admitted, in the argument, to depend entirely on the special verdict; I have therefore confined my examination to it. Two points were considered as arising out of it: 1. Whether a regular notice of non-payment of the bill, was necessary, under the circumstances, to charge the drawer? 2. Whether such notice was given?
*49 Upon the reason and justice of the case, I at first felt doubts, whether the drawer was entitled to strict commercial notice. There is no doubt, that he was authorized to draw the bill, for the jury find, that the drawees owed him the sum for which it was drawn. This, under the general rule, would entitle the drawer to notice. But it is also found, that before the bill was presented for acceptance, Foster fy Moore, the drawees, having been advised of it, wrote a letter to Ferguson, the drawer, on the subject; in answer to which letter Ferguson writes—“ I am sorry you will be unable to retire the draft”—■“ When the draft is nearly due, you can draw on me at sixty days, to enable you to take it up.” It is found also, that when the time for paying the bill drew near, the drawees did draw on Ferguson for the purpose of meeting it; that this bill was sold, on condition that Ferguson should accept it; and was sent on and presented to him, and dishonored by him. These facts seemed to me to shew, clearly, that Ferguson had, if not a perfect knowledge, the strongest grounds to conclude, that Foster fy Moore would not pay the bill he had drawn on them ; and, therefore, was not entitled to strict notice. An examination of the subject, however, has ^satisfied me, that my first impressions are in opposition to the fixed and settled law of the subject. Nicholson v. Gouthit, 2 H. Blac. 609. is the leading case on the point, which has been since uniformly followed. In Esdaile v. Sowerby, 11 East 117. the indorser of a bill had full knowledge of the bankruptcy of the drawer, and the insolvency of the acceptor, before and at the time when the bill became due; yet the court held, that this did not dispense with the necessity of giving such indorser regular notice of the dishonor of the bill. The case of Staples v. O’Kines, 1 Esp. Rep. 332. seems directly in point to the present case: in an action against the drawer of a bill, the defence was want of notice ; the plaintiff called the acceptor, who proved, that when the bill was drawn, he was indebted to the defendant in more than the amount, but that he then represented to *50 the defendant, that it would not be in his power to provide for the bill, when it should become due, and that it was, therefore, then understood between them, that the drawer should provide for it: and it was contended that this supergec¡ec| t[le necess¡ty 0f giving the drawer notice: but lord Kenyon held that it did not, and non-suited the plaintiff. There'are many more cases to the same point. The authority of these adjudications, and the reason on which they are founded, satisfy me, that the drawer, in the case before us, was entitled to regular notice of the non-payment of the bill by Foster & Moore.
Has he received such notice ? The general rule is, that each party must give notice of dishonor of a bill, as soon as he reasonably can; and this reasonable time is a question of law, depending upon the circumstances of each case. Where persons live in the same town, notice must be given the next day; where they live at different places, notice should be sent by the next post; each party having a full day to give notice, but not so that the over diligence of one shall be made to supply the under diligence of another. To this standard, let us bring the facts found by the special verdict. They are substantially these : the bill was protested on the 3rd April and returned to the bank at Norfolk, on the 4th. By the next mail, which left Norfolk on the 5th, a notice of the dishonor of the bill (not the bill and protest) was forwarded to Wilder, which reached him on the 7th; thus far, all was regular. The jury has not found when Wilder gave notice to W. J. Cummings, nor when they gave notice to Brown fy Sons; but it is found that there was a daily mail from Petersburg to Baltimore, reaching the latter place in about forty-five hours, and that Brown Sf Sons gave Ferguson notice of the non-payment and protest on the. 12th April, at Baltimore; saying “ Your draft &sc. is this day returned under protest for non-payment.” It is further found, that the bill and protest were forwarded from Norfolk to Wilder on the 8th April, being the second mail after the protest. From these facts, the conclusion seems *51 irresistible, that there must have been a delay of twenty-four hours more than there ought to have been, in the arrival of the notice at Baltimore: for Wilder receiving notice on the 7th, was bound to give it to W. &f J. Cummings on the 8th; and they ought to have given it to Brown Sons by the mail of the 9th; which if they had done, it w'ould have reached Baltimore on the 11 th; whereas no notice was in fact received by Brown Sons, at Baltimore, till the 12th. And though Brown fy Sons gave immediate notice to Ferguson on the same day, yet this over diligence on their part could not cure the want of due diligence in any of the parties standing before them.
No doubt there might have been causes excusing the delay ; but if such had existed, they ought to have been found ; for in special verdicts, the maxim da non apparentibus et non eodstentibus eadem est ratio, applies with peculiar force. Standing as they do, I cannot but say, that the facts found shew such negligence as under the settled rule discharges the drawer.
I have come to this conclusion, not without a feeling of reluctance; for, like some other questions stricti juris, this requisition of exact notice does not, in the case before us, seem to lead to the justice of the case. But we must recollect, that the rule which prefers a private hardship to a public inconvenience, applies to no subject of the law, with more force than to that in which the mercantile world is concerned.
I do not think the law of Maryland can have any influence on the case. The judgement should be affirmed.
Cabell, J. I am of the same opinion,
Tucker, P. The bill of exchange in this case, having been drawn in Maryland by a merchant of Baltimore on a house in Virginia, was by the law merchant a foreign bill; for as to such bills the several states of the union are held to be foreign to each other; Lonsdale v. Brown, 3 Wash. *52 C. C. R. 404. This decision is in conformity with the legislative understanding of the matter: the legislature of Virginia has thought it necessary to provide, that bills drawn in Virginia on other states, shall not be taken to be foreign . a prov;s;on certainly unnecessary, if these commercial securities had been deprived of that character by the mere act of the adoption of the federal constitution. As to bills drawn in other states on Virginia,’ the statute is however silent. It may well indeed be doubted, whether it could have declared bills drawn and negotiated elsewhere, though drawn on Virginia, to be inland bills; since this would have been to declare the law of the contract of another jurisdiction. Be this as it may, it has not thought proper to do so; and, therefore, the principle of the law merchant remains unchanged, in its application to this bill, unless the law of Maryland has expressly enacted otherwise: this is not found by the verdict, and cannot be presumed. Considering the bill in this light, the question is, Whether there has been due diligence on the part of the holders ?
The transaction relative to the engagement of Ferguson to accept the bill of Foster & Moore, for the purpose of enabling them to take up his bill on them, has been introduced with a view to strengthen the plaintiffs’ case. I do not think it varies it. It neither amounted to an assumpsit, of which the holders of the bill could avail themselves, nor can it have the effect of a waiver of notice. 1st, It cannot amount to an assumpsit to Brown & Sons; it was only an engagement with Foster & Moore to accept; and this without consideration, for they were Ferguson's debtors. It was, therefore, revocable at any time, until either Brown Sons, or some third person, on the faith of that engagement, had advanced their money or given credit to Foster & Moore. Had J. & W. Southgate, for instance, purchased absolutely, Ferguson might have been bound. But their purchase was qualified by a condition, that the bill should be accepted before they advanced their money; thus leaving Ferguson still at liberty to accept or to refuse payment of the bill. So, *53 if Brown & Sons had accepted a bill of Foster & Moore, on Ferguson, in payment of the first bill, or had even 'given credit on the faith of Ferguson’s engagement to accept, Ferguson might have been bound. But the verdict expressly finds, that they gave no credit; they stood upon their rights, as holders of the protested bill, which is the foundation of the present controversy. 2ndly, The agreement to accept and the knowledge of the drawer in anticipation, that the bill would not be paid, did not amount to a waiver of notice. It has been long since settled, that notice or rather knowledge by anticipation, will not dispense with the necessity of notice of non-payment. Even the known insolvency of the drawee will not have that effect; for, as many means of securing payment may exist through the assistance of friends or otherwise, it is reasonable that the drawer or indorsers shall have notice that the holder designs to look to them, in order that they may have the opportunity of availing themselves of such means. Knowledge of the fact of insolvency, or that a bill will be dishonored, is one thing, and notice of protest for non-payment is another. For, until the drawer or indorser receives such notice, he has no reason to conclude that resort will be had to him. He is lulled into security, instead of being awakened to the necessity of providing for his own indemnity. If he receives no notice of dishonor, ho may reasonably conclude, either that contrary to expectation, the bill has been paid, or that the acceptor has been able to provide for it by redrawing or otherwise, or that the holder, notwithstanding the failure to pay at maturity, may hold up the bill from his confidence in the house, and may prefer to look to the acceptor as a matter of convenience. Thus, if a bill were drawn in Richmond on London, in favor of a London merchant, and was not paid at maturity, the payee might nevertheless find it more convenient to arrange with the acceptor in London, than to send back the bill to Virginia for collection. When, therefore, notice is not given, the drawer is diverted from the necessity of providing for his own safety, by the supposition that the holder has given credit to the acceptor. A *54 distinction, however, has been attempted, in this case, because it appears the holders here were informed, that the drawer had notice by anticipation. I do not think this makes any difference. The drawer still had a right to due notice, orc|ei. knowing of the intention to look to him, and being distinctly informed that what had been anticipated had really occurred, and that no provision was made for taking up the bill, he might provide for his own safety. Even, if the case of Brett v. Levitt, 13 East 214. be deemed altogether reconcileable with the current of decisions from Nicholson v. Gouthit to Esdaile v. Sowerby, yet that case would not sustain this : for there, it appeared, that the holder received notice of the fact of the anticipated dishonor from the drawer himself, and this too upon his own express application to the drawer to know if the bill would be paid; but here, the drawer was not at all aware, that the holder had been informed that he (the drawer) had had notice that the bill would not be paid. He could not, therefore, attribute the failure of the holder to give notice, to any such cause, but was left to the conclusion that the holder did not design to look to him, and had either given time, received payment contrary to expectation, or had otherwise arranged with the acceptor. Nor could Ferguson’s offer to accept a new bill have lulled the holders into security; since they -must have been aware, that it was a revocable promise until «orne bill had been negotiated upon the faith of it; and, in fact, they were not lulled into security; for, though they held up their protested bill for a few days, they stood upon their rights as holders, and proceeded to give notice of the protest for non-payment.
Was notice duly given? The bill was returned by the notary to the bank on the 4th April; notice was sent to Wilder on the 5th, and he received it on the 7th ; this was in due season. If he gave notice to W. J. Cummings on the 8th, and they transmitted a notice to the parlies in Baltimore, on the 9th, it would have reached there on the 11th; and then a notice to the drawer on the 12th, would have been good. Now, the drawer did receive notice on *55 the 12th, which was as soon as he had a right to receive it, provided the intermediate parties had proceeded regularly. But it is not enough, unless it is also shewn that each indorsee gave notice within a day after receiving it: if there be a defect in any link of the chain of notices, it is fatal to the holder’s demand. We cannot eke out the under diligence of one party, by the over diligence of another. This is settled by authority, and upon sound reason : for, as the recourse of any immediate indorser against those who lie behind him, arises from his own liability to pay the bill to him to whom he passed it, the laches which takes away his liability, takes away theirs also. The instant such laches occurs in any, all who might otherwise have been liable are discharged at once. It would be unreasonable to permit the over diligence of a prior indorser, to give new life to a responsibility which had once been annihilated by the negligence of another party to the bill. It is, therefore, not sufficient, that, in the aggregate, the drawer had notice as soon as he had a right to expect it. The plaintiff must shew that each indorsee has given regular notice. The onus as to this matter is upon him. He recovers upon the ground, that he has used diligence and given due notice; and, therefore, he must shew due diligence and due notice. And it is not more incumbent upon him to prove that the drawer in fact received notice of the non-payment and protest, than it is to shew that the notices have all been regular in the several gradations. This is a part of his title; and seems, moreover, to be a matter which cannot be permitted to rest upon mere inferences, but must be expressly proved; Lawson v. Sherwood, 1 Stark. Rep. 314. 2 Eng. C. L. R. 405. In this case, such proof must have been in the power of the appellants, if the fact was as their case requires. W. & J. Cummings and Wilder must have been able to establish when they respectively gave notice, if they gave it at all. If we look to the special verdict, it is a blank as to these notices. It does not appear, that any other notice was forwarded from Petersburg to Baltimore, except the bill and protest; and these could not have been sent on until the *56 10th, as they left Norfolk on the 8th, and must have reached Petersburg on the 10th, according to the usual course of mail. This was too late, and accordingly they were not received until the 12th, as the letter of notice of Brown & Sons explicitly proves.
Thus, then, it appears the special verdict does not set forth a good right of action on the part of the plaintiffs. They have failed to establish the various facts upon which alone the defendant could be made liable. Feeling well satisfied of the hardship of the case, and that the rigorous rules as to these commercial securities, which a just policy requires to be inflexible, probably work injustice in this case, I have earnestly revolved this matter in my thoughts, with a view to discover whether a venire de novo could with propriety be awarded. I am satisfied, upon the maturest reflection, that it cannot. If a verdict is indeed imperfect by reason of any ambiguity or uncertainty, so that the court cannot say for which party judgement ought to be given, a venire de novo ought to be awarded. Brown & Rives v. Ralston & Pleasants, 4 Rand. 504. But if the verdict be not ambiguous or uncertain in itself, but the case made by the plaintiff is a defective case, or a defective title, then the judgement should be for the defendant and a venire? ¿¡Lnovo should not be granted. Bellows v. The Hallowell and Augusta Bank, 2 Mason 31. Now, in this case, there is nothing ambiguous or uncertain; but there is a total-failure to trace down the notices from Wilder to Ferguson, through W. & J. Cummings; which was essential to the plaintiffs’ right of action. With every disposition therefore to have sustained the plaintiffs’ action, if it could have been done consistently with settled rules, I am compelled to give my judgement against them; saying with the lord chief justice in Nicholson v. Gouthit, in reference to these commercial securities, that “ it is, perhaps, better to adhere to a rule, however strict, than to relax it,” although the justice of the case be, without doubt, on the side of the party against whom it operates.
Judgement affirmed.