## CARMENA *v.* THE BANK OF LOUISIANA.

One who endorses a note merely as an agent for collection is entitled to the same time as an ordinary endorser, to notify antecedent parties of its non-payment; such notice if put into the post-office early enough for the mail of the day succeeding that on which he received it, is in time.

The stat. of 13 March, 1827, has not changed the general commercial law as to the diligence to be used in serving notices of protest. It merely provides a new mode of proof of demand and notice.

Where the endorser of a bill had directed all letters addressed to him to be sent to a particular post-office, a notice of protest put into that office, and addressed to him there, will be sufficient, though that office be not the nearest to his residence.

APPEAL from the Commercial Court of New Orleans, *Watts,* J.

G. S. *Lacey,* for the plaintiff. The endorsers of the bill, who were the only solvent parties thereto, were discharged by the fault of defendants, who are consequently liable for the injury resulting from this neglect. See 7 Rob. 57. The endorsers were discharged by illegal *delay* in sending notice, and by the illegal *manner* of sending it. As to the delay, see the judgment in the case in 7 Rob. 57. The manner of the notice was illegal, in not having been sent to the office nearest to the residence of the endorsers; and in being put in the post-office not for the purpose of transmission by mail. Where parties receive their letters through the post-office of the place in which a bill is protested, notice of protest must be served personally. See Story on Promissory Notes, p. 374. 10 La. 490. Chitty on Bills, 9 Am. edit. p. 475, *b.* and cases cited. 5 Mart. N. S. 359. The law on this subject is not changed by the stat. of 13 March, 1827. 8 La. 171. 15 La. 54. 6 Rob. 500. 11 Ibid. 467. As to the liability of defendants, see 7 Mart. 464. 1 Ibid. N. S. 216, 365. 2 La. 416.

*Ratliff* and *Cowgill,* on the same side.

L. *Peirce,* for the appellants. Plaintiff does not allege that he did not receive notice of the dishonor of the bill, but that notice was not given to the endorsers. It was his business to notify the endorsers, or others whom he wished to charge. Byles on Bills, p. 100. 16 La. 568. The notices to the endorsers were in time. Bayley on Billls, p. 172. Story on Notes, § 326. *Smith* v. *Mallet,* 2 Camp. 208. 2 Hy. Blackstone, 565. The notices to the endorsers were properly directed, under their instructions to Hall. 6 Rob. 74. *Mead* v. *Carnal,* 6 Ibid, 268. Story on Notes, p. 419, § 344 and note. 8 M. & W. 252. 7 Hals. 268.

The judgment of the court was pronounced by

· SLIDELL, J. *Carmena,* being the holder of a bill of exchange drawn by

CARMENA
*a
BANK OF LOUI-
SIANA.

*P. Doherty* on, and accepted by, *Caldwell & Hickey* of New Orleans, and endorsed by *S. L. Doherty* and *A. Doherty*, brought suit against the endorsers, and was *nonsuited* upon grounds set forth in the decision of the former Supreme Court. See 7 Rob. p. 57. *Carmena* then instituted this suit in which he seeks to make the bank liable for the amount of the note, as having negligently performed the duty of collection. It appears that *Carmena* entrusted the note to the cashier of the branch of the bank at St. Francisville, who sent it to the mother bank at New Orleans, who placed it at maturity in the hands of a notary usually employed by the bank. The notary made presentment to the acceptors and protest, and sent a notice of protest to the cashier at St. Francisville by the first mail, together with the notices for the various other parties under cover to the cashier. He received them in due course of mail, and, on the morning of the succeeding day, deposited the notices for the various antecedent parties in the post-office at St. Francisville, addressed to them at St. Francisville. It appears that, the endorsers live in the parish of West Feliciana and in the country; that *S. L. Doherty* resides about twenty miles from St. Francisville, and *A. Doherty* about eighteen miles from said town; that the post-office at Laurel Hill in that parish, was much nearer to the residence of *A. Doherty* than the one in St. Francisville, and that the post-office at Pinckneyville, in the State of Mississippi, is much nearer the residence of *S. L. Doherty*, than the one in which the notice was deposited. It is also proved that St. Francisville was the post-office at which the drawer and indorsers usually received their letters, and that they had ordered the cashier to put their letters in that office, informing him that they seldom went to other offices.

Before considering the legal consequences of putting the letters into the post-office at St. Francisville thus addressed, it is necessary to consider the circumstances and acts anterior to that event, and whether their legal consequences are such as to have impaired the liability of the indorsers. *Hall* was, it is true, a mere agent for collection; but he was also last indorser upon the draft. He being an indorser, though merely an agent, the law accorded him the same interval to notify adtecedent parties as though he had been an ordinary indorser. Now notice was sent to him by the first mail after protest. On the morning of the day after he received notice in due course of mail, he mailed notices to the indorsers. So far as the question of time, which we are now considering, is involved, this was in time. Judge Story, in his treatise on promissory notes, after noticing the familiar rule that a party who has received notice is entitled to the whole of the day on which he receives it to prepare his notice, and that it is sufficient that the notice be put into the post-office early enough for the post of the succeeding day, (§ 234, and see also the authorities there cited,) then proceeds to consider the case of an agent: "The benefit of this rule is not confined to a mere holder for value, but it applies also to a holder who acts as a mere agent for another person. Thus, if a note has been transmitted by the holder to an agent, or banker, for the purpose of procuring payment thereof at its maturity, such agent or banker will be entitled to the same time to give notice of the dishonor to his principal or customer, as if he were himself the real holder for value; and the principal or customer will be entitled, after he receives such notice from his agent or banker, to the like time to communicate notice to the antecedent parties whom he means to charge, as if he were an indorser, and had received the notice from the real holder for value, and not from his own agent or banker." The principles here so distinctly and positively

announced by this learned author are fully sustained by numerous authorities; nor are they of recent origin. See Bailey on Bills, chap. 7, sec. 2, p. 173, edit. of 1826. Chitty on Bills, ch. 10, p. 521—2. Smith's Mercantile Law, [208]. Byles on Bills [162], and the cases cited by these authors.

The act of 1827, has not, in our opinion, disturbed this well settled rule of the commercial law; and so, as to the general effect of that statute, it has been held by the former Supreme Court. Its object was to provide a new and convenient mode of proof. 3 Rob. 164. 7 La. 11.

So far as the decision in the case of *Carmena v. Doherty*, 7 Rob. 57, tends to overthrow the well established rule of the commercial law above discussed, and so abundantly recognized and sanctioned, we cannot give it our assent; It is of great importance that there should be uniformity in the jurisprudence of our country, upon a subject so vitally connected with the every day interests of commerce as that of bills of exchange and promissory notes.

We conclude that it was in time to mail notice to the drawers and indorsers, on the morning of the day after the cashier and last indorser received them; and the question then presents itself, were these notices properly mailed, being, as we have seen, deposited in the post-office at St. Francisville, addressed to the *Dohertys* respectively at that place?

Whether the deposit of the notices in the post-office at St. Francisville thus addressed, it being proved that it was the office at which the parties usually received their letters, was sufficient to bind them, is a point which it is not necessary for us to decide. In this case a very important fact is proved, which was not proved in the case of *Carman v. Doherty*. The *Dohertys* had informed *Hall*, the cashier, that they seldom went to other offices, and had ordered him to put their letters in that office. This justified the course pursued by *Hall*. "In many cases," says Story in the same treatise, already cited, § 344, "where an indorser of the note points out a particular place to which the notice shall be sent to him, it will be sufficient, although it may not be his domicil or place of business; and the antecedent parties will also be bound by notice from him after the receipt of such notice, if given in due time, in the same manner and under the same circumstances, as if the notice had been regularly sent to his domicil, or place of business; at least if there be no fraud." See also *Shelton v. Braithwaite*, 8 Mees. & Wellsby, 252. *Mead v. Carnal*, 6 Rob. 74.

If the fact thus established had been proved in the case of *Carmena v. Doherty*, it would have concluded the drawer and indorsers on that point of the cause. The present defendants cannot be held responsible for the failure of the plaintiff, on that occasion, to produce evidence which would so materially have changed the legal aspect of the case. The liability in the case now before us rests upon the question of the due performance of the agency, and that question must be tested by the evidence in this cause. It proves that the notices were given in due season, and in the manner directed by the parties to the bill, and consequently fixed their liability.

It is therefore decreed that, the judgment of the Commercial Court be reversed; and it is further decreed that, there be judgment for the defendant, and that the plaintiff pay the costs in both courts.