ISABELLA A. OAKLEY V. JOHN CARR.

FILED DECEMBER 17, 1902. No. 12,276.

Commissioner's opinion, Department No. 1.

1. **Note: DISHONOR: NOTICE: INDORSER.** Notice of dishonor of a promissory note is sufficient if sent to the last indorser by the first mail of the day following dishonor, even though such indorser is an agent for collection, merely, and he is entitled to one additional day to notify the indorser immediately preceding him.

2. ———: ———: ———: **SECOND INDORSER: SATURDAY: MONDAY.** Where such last indorser receives the notice of dishonor on Saturday, his notice to the next prior indorser is timely if served on the following Monday.

3. ———: ———: ———: ———: **ADOPTION OF AN OLD NOTICE.** The notice served by the last indorser need not be actually prepared

by him, but he may adopt and utilize for that purpose a notice sent him by the protesting officer, addressed to the next prior indorser.

4. Action on Promissory Note: AVERMENT: NOTICE OF DISHONOR. In an action on a promissory note, an averment by the holder that he caused due notice of dishonor to be served on the last indorser but one, is sufficient, in the absence of a motion to make more specific, to admit evidence that the notice was given to the last indorser and by him transmitted to the one next prior.

ERROR from the district court for Lancaster county. Action in the nature of assumpsit on one promissory note. Tried below before FROST, J. Judgment for defendant. Plaintiff brings error. *Reversed.*

*Samuel J. Tuttle,* for plaintiff in error.

*Thomas J. Doyle* and *George W. Berge,* contra.

LOBINGIER, C.

This is an action on a promissory note executed and delivered by one U. O. Anderson, of Seward, Nebraska, to defendant in error, who is a resident of Lincoln, and who, before maturity of the note, indorsed it in blank and sold it to plaintiff in error. By its terms the note became due December 5, 1899, the three days of grace expiring on December 8. Some time before the first-named date it was deposited for collection with the First National Bank of Lincoln, which forwarded it to a correspondent bank at Seward, having first indorsed as follows: "Pay any bank or banker or order. First Nat. Bank, Lincoln, Neb. H. S. Freeman, Cashier." On the last day of grace, a notary employed by the Seward bank presented the note for payment at the maker's office and residence, and, not finding him at either place, the note was duly protested. On the same day the notary mailed a notice of protest to the maker at Seward, another to the First National Bank of Lincoln, and a third, directed as follows: "John Carr, Lincoln, Nebr., care of First National Bank,"—all of

these notices being deposited in the Seward post office not later than the evening of December 8. The first mail from Seward to Lincoln, if on time, was delivered at the Lincoln post office about 11 o'clock, and there was a regular delivery by carriers about 12 o'clock. The mail of the First National Bank, however, was delivered by its own special messenger, and the letter addressed to Carr was by this messenger carried with the bank's other mail, and appears to have reached the bank some time after noon of the 9th, which was Saturday. The cashier of the bank testifies that before 2 o'clock on that day, a notice of dishonor from the Lincoln bank was mailed to defendant in error, but the latter testifies that he never received it. The notice from the notary at Seward, however, was given to the messenger of the Lincoln bank and by him delivered to defendant in error on Monday forenoon at 10:40; one of the clerks having previously noted in pencil on the envelope defendant in error's address, "52 Brownell Block." This action is brought against the indorser alone, and the sole defense is that the notice of dishonor was not served in time. There was a trial to the court, a jury being waived, and a judgment for defendant of which plaintiff now seeks a reversal by error proceedings.

At common law, by the weight of authority, the indorser of a dishonored note or bill was entitled to notice thereof on the day following the dishonor, if he resided in the same town with the maker; and if he resided elsewhere, the notice was required to be posted by the first seasonable mail sent on the day following dishonor. The rule was not universal. In *Bank of North America v. M'Knight*, 1 Yeates [Pa.], 145, an indorser living in the same city with the maker was held, though not notified until the second day after dishonor. Moreover, we have in this state a statute governing such cases, which provides that "notice of non-payment, or non-acceptance thereof to the indorser within a reasonable time, shall be adjudged due diligence." Compiled Statutes, ch. 41, sec.

54

3.* Whether this statute enlarges the common-law liability of the indorser and restricts his rights as to notice, or whether it is intended merely to reenact the rule of the *lex mercatoria,* is a question which we need not here determine, because, as we view it, the case at bar is governed by a different principle, presently to be discussed. Suffice it to say that the cases relied upon in the able and ingenious argument for defendant in error were decided in jurisdictions which are without such a statute as ours. But the same law merchant which required the notice of dishonor to be given or sent on the day following non-payment also limited the duty of the holder or protesting officer in this regard to notifying the last indorser, who in turn was allowed an additional day to send notice to the indorser immediately preceding him, and so on until all had been notified. 2 Randolph, Commercial Paper, sec. 1261. Thus in the case before us the notary was not legally bound to notify Carr at all. It would have been sufficient had he simply sent the one notice to the First National Bank, which was the last indorser, and the latter would have had until the following business day to notify Carr. As the bank received its notice on Saturday, it would, under this rule, have until the following Monday to send its notice to defendant in error, for in such cases, the intervening Sunday is not to be counted. *Eagle Bank v. Chapin,* 3 Pick. [Mass.], 180; *Agnew v. Bank,* 2 H. & G. [Md.], 478, and many cases cited in Century Digest, vol. 7, sec. 1169.

It is claimed, however, that this doctrine should not be applied to a case like this, where the last indorser had received and indorsed the note simply for collection. It will be remembered that the indorsements themselves were not such as to disclose that the Lincoln bank was an indorsee for collection only. Carr had indorsed the note in blank and the Lincoln bank had indorsed it merely so that its correspondent might collect, and there was nothing to indicate to the notary but that the Lincoln bank

---

* Cobbey's Annotated Statutes, sec. 8902.

was the holder as well as the last indorser. But aside from this, no authority is cited for the exception contended for by plaintiff in error in the case of indorsers who hold for collection only. On the other hand, there is ample support for the proposition that it is sufficient to notify such indorsers in the same way as other last indorsers are notified and that prior indorsers may be held by virtue of the usual notice from them. *Carmena v. Bank of Louisiana,* 1 La. Ann., 369; *Eagle Bank v. Hathaway,* 5 Met. [Mass.], 212; *Brown v. Ferguson,** 4 Leigh [Va.], 37; *Linn v. Horton,* 17 Wis., *151; 2 Randolph, Commercial Paper, secs. 1241, 1262. *Boyer v. Richardson,* 52 Nebr., 156, cited by defendant in error, in no way conflicts with the foregoing. The court there was simply considering the effect of an indorsement for collection on the title to a note, and held that such an indorsee acquired no right of action against a prior indorser.

But it is contended that the First National Bank has never so notified Carr. "They simply attended to the courtesy of seeing that Carr eventually got a letter that was sent to him in their care without even knowing its contents." If it had developed that the letter which the bank delivered to Carr by its messenger was not in fact a notice of dishonor, and none other had been sent, he, of course, would have been released from liability. In taking the course it did, the bank might have been assuming some risk, though it must be remembered that its agent claimed to have mailed a separate letter to Carr, and testified that it was their custom, out of ample caution, to adopt in such cases both methods of notification. But since the letter delivered to Carr was complete and sufficient notice of dishonor, we are unable to see how it can profit defendant in error that it was not actually prepared by the clerks or officers of the Lincoln bank. The latter had a right to employ such agencies as it saw fit, both in the preparation and delivery of the notice; among

* 24 Am. Dec., 707.

others, it had a right to adopt and utilize the work of the notary employed by its correspondent bank at Seward. The form of the notice and the time of its delivery are the important elements. Who may have prepared it, provided it was done by authority, we deem unimportant. It seems to us, therefore, that this letter from the notary, received by the Lincoln bank in the due course of mail and sent by it with a notation of his office address to defendant in error on the next business day, was a sufficient compliance with the rules of the law merchant as well as with the requirements of our statute.

But it is urged that plaintiff in error did not, in the trial court, rely upon this so-called doctrine of the "sequence of notices," but claimed to have notified Carr directly. What plaintiff in error's counsel may have urged in his argument below we have no means of knowing, nor do we deem it material. In the petition, which is our only guide in determining what was the cause of action, it is alleged, after setting forth the non-payment of the note, that plaintiff "caused due notice of such demand and non-payment to be forthwith served upon said defendant, said John Carr, and he duly received such notice." It will be seen that this is not an averment that plaintiff notified Carr directly but merely that she "caused due notice * * * to be served"; and it would seem to constitute a sufficient compliance with section 129 of the Code, requiring the facts "which fix liability" to be stated. Whether the allegation might not have been open to a motion to make it more specific by stating the manner and means of service, we need not now inquire, for no motion of the kind was made; and, in its absence, the averment was certainly sufficient to permit the introduction of evidence that the notice was served by an agent for collection employed by the plaintiff. At any rate, no objection was made to the admission of such evidence, and we are unable to see how the alleged variance in the theory of recovery, even if it existed, could now avail defendant in error.

The conclusions at which we have arrived might, we think, be reached in another way and still satisfy the strict requirements of the law merchant.   Under that law, where a note or bill is sent by the holder to an agent in another town for presentment to the maker, the agent is allowed one day to post the notice of dishonor to his principal, and the latter is entitled to an additional day to send notice to the last indorser, and the agent is not required to notify the indorser directly, though this would afford him earlier notice.   *Ellis v. Commercial Bank,** 7 How. [Miss.], 294; *Lawson v. Farmers' Bank*, 1 Ohio St., 206; *Church v. Barlow*, 9 Pick. [Mass.], 547; *United States Bank v. Goddard*,† 5 Mason [U. S. C. C.], 366; *State Bank v. Ayres*.‡ 7 N. J. Law, *130; 2 Randolph, Commercial Paper, sec. 1262.   If, therefore, in the case at bar, the notary had sent the notice of dishonor directly to plaintiff in error and she had received it in the due course of mail and had presented her notice to defendant in error by the time the bank's messenger reached him, she would have been within the letter of the *lex mercatoria*.   Can it make any legal difference that her place in the transaction was taken by her agent, the First National Bank? ˙ The Seward notary might well have thought that he was complying with this rule in sending the notice to the Lincoln bank, for the indorsements were such as to indicate that it was the holder.   And, as was well stated by Ross, J., in *First Nat. Bank v. Wood*,§ 51 Vt., 471, where a notice of dishonor, sent to the wrong address, and thence forwarded, was held sufficient: "All the rules requiring the holder to use diligence to ascertain the residence of the indorser, and to leave notice at his place of business or residence, when they reside in the same town, or to mail notice as soon as the day following the day of the maturity of the note, addressed to him at his place of residence, when they reside in different towns, are made and enforced that the indorser may be informed that his lia-

---

* 40 Am. Dec., 63.                    ‡ 11 Am. Dec., 535.
† Fed. Cas. No. 917.                  § 31 Am. Rep., 692.

bility on the note has not been discharged by the party whose duty it was to pay the note at maturity. When, therefore, the indorser in fact receives notice in due season that the note has been duly presented for payment and protested, the purpose of the law has been accomplished, although the holder of the note has not complied with one of the established rules in regard to the use of diligence in giving notice."

It seems to us that in this case both the purpose and the letter of the law have been complied with, and we are forced to the conclusion that the learned trial judge erred in finding for the defendant. We recommend that the judgment be reversed and the cause remanded for further proceedings according to law.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.